**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ROBERT DEFICCIO, et al., | : | CIVIL ACTION NO. 11-7406 (MLC) |
|  | : |  |
| Plaintiffs, | : | **MEMORANDUM OPINION** |
|  | : |  |
| v. | : |  |
|  | : |  |
| WINNEBAGO INDUSTRIES, INC., | : |  |
|  | : |  |
| Defendant. | : |  |

**COOPER, District Judge**

Plaintiffs, Robert Deficcio and Mary Jo Deficcio (collectively, "Plaintiffs"), brought this action in New Jersey Superior Court, Mercer County, against defendant, Winnebago Industries, Inc. ("Winnebago" or "Defendant").  Defendant removed the action to this Court on the basis that subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331, 1332 and 1367. (Dkt. entry no. 1, Rmv. Not. at 2-3.)

This is the second action brought by Plaintiffs against Winnebago.  In <u>Deficcio v. Winnebago Industries</u>, No. 11-872 (MLC) (D.N.J. filed 2-5-11) ("First Action"), Plaintiffs brought claims against Winnebago and Freightliner Custom Chassis Corp., alleging violations of the New Jersey Lemon Law, N.J.S.A. § 56:12-29 <u>et seq.</u> (Count I), the Magnuson-Moss Warranty Improvement Act ("Magnuson-Moss Act"), 15 U.S.C. § 2301 <u>et seq.</u> (Count II), breach of express and implied warranties (Count III), and the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 <u>et seq.</u>

(Count IV), in connection with a 2008 Winnebago 40TD Vectra motor home (the "vehicle") purchased by Plaintiffs on September 14, 2007.  See No. 11-872, dkt. entry no. 1, Rmv. Not., Ex. A, Compl. In a Memorandum Opinion dated September 30, 2011 ("9-30-11 Mem. Op."), the Court granted a motion to dismiss the Complaint in the First Action, on the basis that "a Settlement Agreement and Release dated May 27, 2010 ["Settlement Agreement"] forecloses the Plaintiffs' claims."  No. 11-872, dkt. entry no. 13, 9-30-11 Mem. Op. at 2; id. at 13 (finding that "the Settlement Agreement is enforceable and bars the claims pleaded in the Complaint[;] Plaintiffs' appropriate recourse is the warranty set forth in the Settlement Agreement and/or a cause of action for breach of the Settlement Agreement"); see also No. 11-872, dkt. entry no. 14, 9-30-11 Order & J.

The Amended Complaint in this action, asserted against Winnebago only, asserts claims for breach of the Settlement Agreement (Count I), violation of the Magnuson-Moss Act (Count II), breach of express and implied warranties (Count III), violation of the NJCFA (Count IV), and negligence (Count V). (Dkt. entry no. 7, Am. Compl.)  Plaintiffs seek punitive damages in association with these claims (Count VI).  (Id. at ¶¶ 81-83.)

### BACKGROUND

Plaintiffs purchased the vehicle for more than $253,000. (Am. Compl. at ¶ 5.)  Winnebago issued express written warranties

2

covering the vehicle's body and non-chassis components including a 12 month/15,000 mile bumper to bumper warranty, a 36 month/36,000 mile structural warranty, and a 10 year roof skin warranty.  (Id. at ¶ 6.)  Plaintiffs assert that Winnebago also made implied warranties of merchantability and fitness for a particular purpose with respect to the vehicle.  (Id. at ¶ 7.)

Plaintiffs allege that the vehicle "has suffered numerous breakdowns and component failures which have either not been remedied by defendants or were not remedied by defendants within a reasonable period of time or a reasonable number of repair attempts."  (Id. at ¶ 8.)  Plaintiffs delivered the vehicle to authorized dealers for repairs on numerous occasions, but remained dissatisfied with attempts to repair "various defective components and/or conditions," and found themselves occasionally "stranded . . . at remote locations" when repairs were needed. (Id. at ¶¶ 9-10.)

Plaintiffs and Winnebago negotiated certain repairs to be made to the vehicle, and entered into the Settlement Agreement on May 27, 2010.  (Id. at ¶ 11 & Ex. E, 5-27-10 Settlement Agreement.)  The Settlement Agreement provided that Winnebago would transport the vehicle to and from its Forest City, Iowa manufacturing facility for numerous repairs to be performed on specified components.  (Am. Compl. at ¶ 12.)  Such repairs, listed in exhibits to the Settlement Agreement, were to be

3

"performed to commercially reasonable standards and warranted by Winnebago for six (6) months from the return of the vehicle" to Plaintiffs. (5-27-10 Settlement Agreement at ¶ 1.)  Additionally, Winnebago agreed to pay Plaintiffs $17,500.  (<u>Id.</u>)  In exchange, Plaintiffs agreed to release and forever discharge Winnebago "from any and all claims and causes of action . . . based on any alleged defects or non-conformities which were asserted or could have been asserted involving the Subject Vehicle up to the date of this Settlement Agreement and Release."  (<u>Id.</u> at ¶ 2.)

The Settlement Agreement further provided that Plaintiffs agreed to release and unconditionally waive any right to use the prior repair attempts or the repairs bargained for in the Settlement Agreement as (1) a basis for "meeting any eligibility requirements for any future claim under any state or federal law," (2) "evidence that a defect exists in the Subject Vehicle in any future claim," or (3) "evidence that [Winnebago] . . . failed to repair the Subject Vehicle after a reasonable number of attempts or after a reasonable opportunity to repair it."  (<u>Id.</u> at ¶ 3.)  The Settlement Agreement states that Plaintiffs "acknowledge and agree that the Release set forth herein is a general release and . . . agree that they have accepted payment of the sum and other consideration specified herein as a complete compromise of matters involving disputed issues of law and fact arising as a result of their purchase of the Subject Vehicle and

they assume the risk that the facts or law may be otherwise than they believe." (<u>Id.</u> at ¶ 4.)

Plaintiffs state that the vehicle remained at Winnebago's Iowa facility for repairs for approximately seven weeks instead of the originally contemplated three to four weeks. (Am. Compl. at ¶¶ 17-18.) Plaintiffs further allege that when the vehicle was returned to them, they noticed "numerous unrepaired defects and conditions that were to be repaired or replaced pursuant to" the Settlement Agreement, and in addition the vehicle had sustained new and additional damage while in Winnebago's custody. (<u>Id.</u> at ¶¶ 22-23.) The Amended Complaint lists fifty-six examples of unrepaired damage to or defects of the vehicle. (<u>Id.</u> at ¶ 24.) Plaintiffs allege that this failure to repair or replace numerous defects and conditions was knowing and intentional on Winnebago's part, and specifically claim that they were able to confirm that Winnebago failed to replace cabinetry and remote control modules by discreetly marking each piece of cabinetry and by the fact that the remote controls still continued to operate with Plaintiffs' PIN numbers notwithstanding that new modules should have required re-installation of those PIN numbers. (<u>Id.</u> at ¶¶ 25-28.)

Plaintiffs allege that the vehicle suffered body damage to the upper center portion of the right side of the motor home body while in Winnebago's possession and that Winnebago failed to

5

inform Plaintiffs of the same, instead attempting to repair the damage while the vehicle was in Iowa.  (<u>Id.</u> at ¶¶ 29-30.) Plaintiffs claim that the vehicle's value has been impaired in the amount of $39,150 due to the body damage allegedly caused at the Iowa facility.  (<u>Id.</u> at ¶ 31 & Ex. F, Barone Report.) Plaintiffs allege that "numerous other portions of the motor home sustained damage while in the possession and control of defendant during the May 2010 Agreement repairs" and that these damages were not disclosed to Plaintiffs, constituting a basis for separate contract and tort claims beyond the scope of the Settlement Agreement.  (<u>Id.</u> at ¶¶ 32, 34.)  Additionally, Plaintiffs allege that the "roof skin" of the vehicle is subject to a ten-year warranty and that Plaintiffs "complained about the defective roof skin on" the vehicle both before and after entering into the Settlement Agreement.  (<u>Id.</u> at ¶¶ 34-35.)

The Amended Complaint seeks relief for breach of the Settlement Agreement, alleging that the vehicle has required numerous post-Settlement Agreement repairs and that Defendant has "failed or refused to repair numerous defects and conditions covered under the May 2010 Agreement warranties and/or those additional numerous items that were damaged during the May 2010 Agreement repairs"; that Plaintiffs' ability to use the vehicle has been hampered by the alleged failure to make agreed-to repairs; that the "use, value, and safety of the vehicle has been

severely impaired" as a result of the alleged failure to make the agreed-to repairs; and that defendant has refused to undertake necessary repairs on the defective roof.  (Id. at ¶¶ 38-45.) Plaintiffs also assert (1) a Magnuson-Moss Act claim for breach of the Settlement Agreement with respect to ineffective repairs and Defendant's alleged failure to repair the roof of the vehicle; (2) breach of warranty, with respect to (a) the express six-month warranty set forth in the Settlement Agreement, (b) the warranty that the Settlement Agreement repairs would be performed to commercially reasonable standards, and (c) implied warranty of merchantability of the Settlement Agreement repairs, pursuant to the Uniform Commercial Code ("UCC"); (3) a NJCFA claim based on Defendant's alleged "intentional failure to perform all of the required repairs mandated by" the Settlement Agreement; and (4) a negligence claim, based on the "substandard repairs" to the vehicle as well as the "extensive body damage" it suffered while in Defendant's custody.  (Am. Compl.)

Defendant moves to dismiss the Amended Complaint, arguing that the Settlement Agreement bars Plaintiffs' Magnuson-Moss Act and breach of warranty claims, and that Plaintiffs have not alleged sufficient facts for the remaining claims to survive because, inter alia, those causes of action arise only in connection with a sale of goods, which the Settlement Agreement did not involve.  (Dkt. entry no. 10, Def. Br. at 6-13.)

Defendant contends that "in light of the Settlement Agreement by and between Plaintiffs and Winnebago, Plaintiffs' remedies against Winnebago with respect to the subject vehicle are limited to the repair provision contained in the Settlement Agreement or . . . an action for breach of the Settlement Agreement." (Id. at 4.)  Defendant further argues that the proper remedy for a breach of the Settlement Agreement is "damages in the amount of the costs to repair the allegedly unrepaired concerns . . . contemplated under the Settlement Agreement," not "a refund of the entire purchase price of the subject vehicle and punitive damages based upon baseless and conclusory allegations that Winnebago 'knowingly and intentionally failed' to comply with its obligations under the Settlement Agreement." (Id.)  Defendant also contends that Plaintiffs' negligence claim is barred by the economic loss doctrine.  (Id. at 16-17.)

Plaintiffs, in opposition to the motion, argue that (1) their pleading as to damages for the claim for breach of the Settlement Agreement is not a basis for dismissal of that claim, because Plaintiffs have alleged that they have been damaged; (2) allegations relating to the roof skin are not barred by the Settlement Agreement, because the warranty for the vehicle's roof skin lasts ten years and the Settlement Agreement specifically stated that it was not intended to "suspend or cancel any existing or future warranty coverage in effect and applicable

8

toward the subject vehicle"; (3) the warranties contained in the Settlement Agreement itself are covered by the Magnuson-Moss Act and UCC; (4) they have stated a plausible claim under the NJCFA regarding Winnebago's "subsequent performance of its repair obligations as set forth in the" Settlement Agreement; and (5) the economic loss doctrine would not apply if the Court dismisses Plaintiffs' breach of contract and/or breach of warranty claims, although if the Court were to rule that Plaintiffs' breach of warranty and/or breach of contract claims survive, then Plaintiffs do not object to dismissal of the negligence claim. (Dkt. entry no. 11, Pl. Opp'n at 9-17.)

## DISCUSSION

### I.    12(b)(6) Motion to Dismiss Standard

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). At this stage, a "complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

"[W]here the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has

alleged--but it has not 'show[n]'--that the 'pleader is entitled

to relief.'" Iqbal, 556 U.S. at 679 (quoting Rule 8(a)(2)).

The Court, in evaluating a Rule 12(b)(6) motion to dismiss

for failure to state a claim, may consider the complaint,

exhibits attached thereto, matters of public record, and

undisputedly authentic documents if the plaintiff's claims are

based upon those documents. See Pension Benefit Guar. Corp. v.

White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Here,

Plaintiffs have attached to the Amended Complaint, inter alia,

the receipt for the purchase of the vehicle, the financing

agreement, the Winnebago express written warranty, various repair

invoices and "warranty write up[s]," and the Settlement

Agreement. (Am. Compl., Exs. A-E.) Thus, the Settlement

Agreement and other documents attached to and relied upon in the

Amended Complaint are properly before the Court at this juncture.

Plaintiffs also attach an "expert report" by Charlie Barone of

autoclaimshelp.net, opining as to the condition and allegedly

compromised value of the vehicle. (Id., Ex. F, Barone Report.)

The Barone Report is not the type of document that should be

accepted as true on a motion to dismiss, and the Court will not

10

accord it any weight except insofar as it provides the basis for the Plaintiffs' allegations that the vehicle incurred damage while at Defendant's Iowa facility.

## II.  Analysis

### A.  Breach of Contract Claim

Plaintiffs, to state a claim for breach of contract, must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007).  The Court held in the First Action that the Settlement Agreement constituted a valid and enforceable contract between the parties, and the proper remedy for Plaintiffs' complaints about incomplete or ineffective repairs, or damage done to the vehicle while it was in Defendant's possession, would be a suit for breach of that contract.  See 9-30-11 Mem. Op. at 10-11.

Defendant urges that the breach of contract claim must be dismissed insofar as the Amended Complaint "contains only the vague conclusion that Plaintiffs 'have been and will continue to be financially damaged' due to the allege [sic] breach of the Settlement Agreement."  (Dkt. entry no. 12, Def. Reply Br. at 1.) Defendant also apparently takes issue with the fact that Plaintiffs' prayer for relief seeks "an amount equal to the purchase price of the subject vehicle."  (Id.)  Defendant thus

does not contest the first, second, or fourth elements of a breach of contract claim.

The Court finds that the Amended Complaint pleads sufficient facts to set forth a plausible claim to relief for breach of contract.  Plaintiffs allege that they have been damaged by the alleged breach of the Settlement Agreement in the form of, e.g., the "use, value and safety of the vehicle" being "severely impaired."  (Am. Compl. at ¶ 43.)  This allegation as to damages clearly "flows from" the alleged breach of "defendant's failure to repair the numerous defects and conditions covered under the May 2010 Agreement warranties and/or those items that were damaged during the May 2010 Agreement repairs," and will satisfy Plaintiffs' burden of pleading that it has been damaged by Defendant's alleged breach of the Settlement Agreement.  (Id.)  See, e.g., Restatement (Second) of Contracts § 347.  Plaintiffs also allege that they were damaged in the amount of approximately $39,150 based on body damage allegedly sustained while the vehicle was in Defendant's custody for repairs.  (Am. Compl. at ¶¶ 29-32 & Barone Rep.)  The Court will therefore deny Defendant's motion insofar as it seeks dismissal of Count I.

   **B.   Breach of Warranty Claims**

      **1.   "Roof Skin" Warranty**

The Amended Complaint alleges that on "numerous occasions both prior to and after the May 2010 Agreement repairs,

Plaintiffs have complained about the defective roof skin" on the vehicle, and that "Winnebago has refused to undertake necessary repairs on the defective roof."   (Am. Compl. at ¶¶ 36, 44, 52, 59.)   Plaintiffs seek to recover under both (1) the Magnuson-Moss Act, and (2) express and implied warranties in the Settlement Agreement.   (Id. at ¶¶ 53, 56.)   The Amended Complaint also makes reference to Defendant's "ten (10) year" roof skin warranty. (Id. at ¶ 36 & Ex. C, "Premium Warranty Protection" flyer (stating that vehicle comes with "Standard 10-year limited parts-and-labor roof skin warranty").)   In their opposition to Defendant's motion, Plaintiffs argue that (1) the express warranties contained in the Settlement Agreement cover the roof skin, and (2) the Settlement Agreement did not affect the 10-year roof skin warranty, because the Settlement Agreement provides that "THIS AGREEMENT IS NOT INTENDED AND WILL NOT DIMINISH, SUSPEND OR CANCEL ANY EXISTING OR FUTURE WARRANTY COVERAGE IN EFFECT AND APPLICABLE TOWARD THE SUBJECT VEHICLE," and the 10-year roof skin warranty had not expired at the time of the execution of the Settlement Agreement.   (Pl. Opp'n at 9-10, 13; Settlement Agreement ¶ 7.)

     The Court finds that Plaintiffs' claims for breach of warranty relating to the "roof skin"-specific warranty are barred by the Settlement Agreement.   The record before the Court shows that Plaintiffs were aware of alleged problems with the roof of

the vehicle prior to entering into the Settlement Agreement. (<u>See</u> Settlement Agreement, Ex. B, 5-3-10 Email (advising Plaintiffs' counsel that "it appears that there are spider cracks in the fiberglass on the roof"); Am. Compl. at ¶ 24 ("Many areas of the roof remained unrepaired [after the May 2010 Agreement repairs] including numerous spider cracks and a large crack on the rear of the roof").)  Under the plain terms of the Settlement Agreement, Plaintiffs "released and forever discharged" Winnebago from "any and all claims and causes of action . . . which were asserted or could have been asserted involving the Subject Vehicle up to the date of this Settlement Agreement and Release. . . . Any conflicting terms or clauses are expressly superseded by this clause."  (Settlement Agreement ¶ 2.)  Thus, there exists no independent basis for Plaintiffs to now seek relief for an alleged breach of the "roof skin" warranty itself.  Instead, Plaintiffs are limited to including any dissatisfaction with the repairs to the roof skin in its claim for breach of contract of the Settlement Agreement, which this Court has ruled may go forward.  Accordingly, Plaintiffs' Magnuson-Moss Act (Count II) and breach of warranty (Count III) claims will be dismissed insofar as they pertain to an alleged breach of the "roof skin" warranty.

14

### 2.   Settlement Agreement Warranty

In support of their Magnuson-Moss Act and breach of warranty claims, Plaintiffs appear to take the position that new causes of action for breach of warranty were created by the Settlement Agreement itself under the Magnuson-Moss Act or the UCC, because "the May 2010 Agreement warranties relate back to defendant's original warranties" and therefore can be considered to have a "connection with the sale" of goods.  (Pl. Opp'n at 11-12.)

Plaintiffs cite no authority for their position that the Settlement Agreement "relates back" to the original bill of sale. Plaintiffs had already purchased the vehicle when they negotiated and entered into the Settlement Agreement.  As the Court explained in the First Action, Plaintiffs are constrained to seeking redress through a cause of action for breach of the Settlement Agreement, and the Magnuson-Moss Act and UCC breach of warranty claims raised in the First Action were extinguished by the Settlement Agreement itself; there is thus nothing to "relate back" to.  See 9-30-11 Mem. Op. at 10-11.

The Settlement Agreement is not a contract for a sale of goods.  The Magnuson-Moss Act applies only to warranties entered into "in connection with the sale of a consumer product by a supplier to a buyer."  15 U.S.C. § 2301(6).  Accordingly, we find that the alleged breach of the six-month warranty in the Settlement Agreement is not subject to the private cause of

15

action provided by the Magnuson-Moss Act, 15 U.S.C. § 2310(d)(1) (providing that a consumer who is damaged by the failure of a warrantor to comply with its obligations under a written warranty, implied warranty, or service contract as defined in § 2301).  Similarly, the warranties arising under Article II of the UCC require a "sale of goods" as a prerequisite to pursuing a cause of action.  See N.J.S.A. § 12A:2-313(1)(a) ("Express warranties by the seller are created [by] any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain. . . ."); see also id. § 12A:2-314(1) ("[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."); id. § 12A:2-102 ("[T]his Chapter applies to transactions in goods"); id. § 12A:2-106 ("In this Chapter . . . 'contract' and 'agreement' are limited to those relating to the present or future sale of goods").[1]

The Magnuson-Moss Act claim (Count II) will therefore be dismissed in its entirety.  The breach of warranty claim (Count III) will be dismissed insofar as it invokes the UCC for the reasons stated above.  We note that the remaining part of Count

---

[1] Although the Amended Complaint indicates that Plaintiffs seek to recover for breach of the implied warranty of merchantability under the UCC, Plaintiffs' opposition brief asserts that the Settlement Agreement constitutes an express warranty under the UCC.  (Am. Compl. at ¶ 56; Pl. Opp'n at 13-14.)

III, claiming breach of the warranties set forth in the Settlement Agreement, is essentially superfluous to Count I, breach of the Settlement Agreement.  See, e.g., Gotthelf v. Toyota Motor Sales, U.S.A., Inc., No. 10-4429, 2012 WL 1574301, at *19 (D.N.J. May 3, 2012) (setting forth as standard for breach of express warranty the same standard for breach of contract). Because Count III of the Amended Complaint alleges no facts that distinguish it from Count I, the Court will dismiss Count III in its entirety.

### C.   NJCFA Claim

Count IV of the Amended Complaint asserts a claim under the NJCFA, alleging that (1) Winnebago's "actions surrounding the servicing of the subject vehicle pursuant to the May 2010 Agreement repairs were unconscionable"; (2) Winnebago intentionally failed to perform all the required repairs mandated by the Settlement Agreement; and (3) Winnebago's failure to inform Plaintiffs of the body damage sustained in its care violated the NJCFA.  (Am. Compl. at ¶¶ 63-70.)

This claim suffers from the same infirmity discussed above with respect to the breach of contract claims: the NJCFA requires a connection to the sale of goods.  See N.J.S.A. § 56:8-2 ("The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the . . . omission of any material

17

fact with intent that others rely upon such concealment, suppressions or omissions, <u>in connection with the sale or advertisement of any merchandise</u> or real estate . . . is declared to be an unlawful practice. . . .") (emphasis added).  The fraud alleged here pertains to Defendant's post-Settlement Agreement actions, and cannot be said to be "in connection with the sale" of "merchandise."  "Merchandise" is defined as "objects, wares, [or] goods . . . offered directly or indirectly to the public for sale."  N.J.S.A. § 56:8-1(c).  The vehicle was not being offered "to the public" when the parties negotiated the Settlement Agreement, and the Settlement Agreement did not involve a sale of goods or "relate back" thereto.  Thus, the Plaintiffs' NJCFA claim (Count IV) will be dismissed.  <u>See</u> <u>Nicholls v. Portfolio Recovery Assocs., LLC</u>, No. 09-5714, 2010 WL 1257738, at *5 (D.N.J. Mar. 29, 2010).

**D.   Negligence Claim**

Plaintiffs concede that their negligence claim is barred by the economic loss doctrine if they are allowed to pursue their claim for breach of the Settlement Agreement.  (Pl. Opp'n at 17.) The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract."  <u>Bracco Diagnostics Inc. v. Bergen Brunswig Drug Co.</u>, 226 F.Supp.2d 557, 562 (D.N.J. 2002) (citation omitted).  The Court has ruled that Plaintiffs have stated a

claim for breach of the Settlement Agreement.  Accordingly,
Plaintiffs' negligence claim (Count V) will be dismissed.

###    E.    Punitive Damages

The parties contest whether Plaintiffs may seek punitive
damages in association with their claims.  Plaintiffs concede
that "typically . . . the concept of punitive damages has not
been permitted in litigation involving contractual breaches," but
argue that "special circumstances" exist that allow punitive
damages in this case.  (Pl. Opp'n at 18.)  Plaintiffs contend
that a Winnebago employee's promise to "personally inspect the
coach to assure the woodwork meets commercially reasonable
standards" supports allowing them to pursue punitive damages
because it created an "unusual relationship" reflecting a "breach
of trust beyond the mere breach of a commercial contract."  (Id.)

The Court disagrees.  The facts alleged in the Amended
Complaint support a typical breach of contract claim, nothing
more.  "Where the essence of a cause of action is limited to a
breach of [a commercial contract], punitive damages are not
appropriate regardless of the nature of the conduct constituting
the breach."  Sandler v. Lawn-A-Mat Chem. & Equip. Corp., 358
A.2d 805, 812 (N.J. App. Div. 1976).  The Sandler court uses the
term "commercial contract" to distinguish the type of contracts
entitled to an exception from this rule, such as contracts to
marry or those involving a fiduciary or "special statutory

public" duty, and notes that a plaintiff's use of "stylized labels such as 'malice' and 'maliciously' in the pleadings . . . does not transform the essence of the action into a tortious wrong."  Id.  Plaintiffs' allegation that a Winnebago employee negotiated the Settlement Agreement and promised to personally oversee the repairs is not indicative of an "unusual relationship" that would allow an award of punitive damages.  See Fuscellaro v. Combined Ins. Grp., Ltd., No. 11-723, 2011 WL 4549152, at *6 (D.N.J. Sept. 29, 2011) ("[B]reaches of contract do not give rise to punitive damages unless the defendant also violates a separate and independent duty beyond the contract.").  Accordingly, Count VI will be dismissed.

### CONCLUSION

For the reasons discussed supra, the Court will dismiss Count II through Count VI of the Amended Complaint with prejudice.  The Court will deny Defendant's motion to dismiss with respect to Count I.

Having dismissed the single federal claim in the Amended Complaint, the Court must consider whether an alternate basis for subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332.  Diversity of the citizenship of the parties is not at issue.  (See Rmv. Not. at ¶ 12.)  However, the Court is concerned as to whether the Plaintiffs' remaining claim, for breach of the Settlement Agreement, satisfies the amount in controversy

requirement.   <u>See</u> 28 U.S.C. § 1332(a).   Having considered the
Amended Complaint and the exhibits annexed thereto, including the
Settlement Agreement, repair invoices, and the Barone Report, the
Court finds that Plaintiffs' prayer for relief demanding judgment
"in an amount equal to the purchase price of the subject vehicle,
plus all collateral charges and attorney fees," is not a
plausible approximation of damages for breach of the Settlement
Agreement.   (Am. Compl. at ¶ 46 & "Wherefore" clause.)
Plaintiffs allege no facts suggesting that the allegedly
unperformed or inadequately performed repairs have decimated the
vehicle's entire value.

Plaintiffs have provided an estimate that the value of the
vehicle was impaired by $39,150 as to the alleged body damage
incurred while the vehicle was in Defendant's possession, but it
is unclear what the amount in controversy is with respect to the
repairs allegedly agreed to but not made, or made but not to
commercially reasonable standards.   Thus, the Court will order the
parties to show cause why this action should not be remanded to
state court for lack of jurisdiction pursuant to 28 U.S.C. § 1332.

The Court will issue an appropriate Order and Judgment, and
a separate Order to Show Cause.

                              __s/ Mary L. Cooper_____
                              **MARY L. COOPER**
                              United States District Judge

Dated:    May 21, 2012