NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| ROBERT DEFICCIO, et al., | : | CIVIL ACTION NO. 11-7406 (MLC) |
| | : | |
| Plaintiffs, | : | **MEMORANDUM OPINION** |
| | : | |
| v. | : | |
| | : | |
| WINNEBAGO INDUSTRIES, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

**COOPER, District Judge**

The plaintiffs, Robert DeFiccio and Mary Jo DeFiccio, commenced this action against the defendant, Winnebago Industries, Inc. ("WII"), asserting claims for: breach of a settlement agreement ("Settlement Agreement"); violations of the Magnuson-Moss Warranty Improvement Act ("MMWIA"); breach of warranties; violations of the New Jersey Consumer Fraud Act; negligence; and punitive damages. (See dkt. 7.) Only the claim for breach of the Settlement Agreement remains viable, and WII now moves for summary judgment on that claim. (See dkt. 15; dkt. 43.) The plaintiffs oppose the motion, which the Court will decide on the papers. (See dkt. 45.) See L.Civ.R. 78.1(b). The Court, for the reasons stated herein, will grant the motion.

I.   BACKGROUND

A.   Factual Allegations

The plaintiffs' motor home ("Motor Home"), which was purchased from an authorized sales and service dealership identified as Media Camping Center, allegedly

suffered many breakdowns and component failures since the time of purchase in September 2007. (See dkt. 7 at 1–2.) In May 2010, the parties entered into the Settlement Agreement, which provided that: (1) WII would (a) transport the Motor Home to and from its Iowa facility for specified repairs to be "performed to commercially reasonable standards and warranted by [WII] for six months from the return of the [Motor Home] to [the plaintiffs]", and (b) pay the plaintiffs $17,500; and (2) the plaintiffs would "release and forever discharge [WII] . . . from any and all claims and causes of action . . . based on any alleged defects or non-conformities which were asserted or could have been asserted involving the [Motor Home] up to the date of this Settlement Agreement and Release." (See id. at 3; id., Ex. E at 77 (paras. 1–2).)

The plaintiffs allege that the Motor Home: (1) remained at the Iowa facility for repairs for about seven weeks instead of the originally contemplated three to four weeks; and (2) was returned to them with "numerous unrepaired defects and conditions that were specifically identified to be repaired or replaced pursuant to" the Settlement Agreement, and had sustained new damage while in WII's custody. (See dkt. 7 at 4.) The plaintiffs retained Charles Barone ("Barone") as an expert witness to inspect the alleged undisclosed damage and to opine on the Motor Home's diminished value caused by the damage and repair attempts. (See dkt. 39 at 2; dkt. 7, Ex. F at 105–111.)

### B. Previous Motion Practice

The Court denied WII's previous motion for summary judgment as to the claim for breach of the Settlement Agreement without prejudice, but in doing so directed WII to

2

first resolve the issue of Barone's reliability. (See dkt. 29; dkt. 35.) The Court thereafter: (1) granted the part of WII's subsequent motion seeking to strike the opinion evidence provided by Barone for being unreliable; and (2) denied the part of the same motion seeking to preclude the plaintiffs from offering any expert evidence or testimony. (See dkt. 37; dkt. 39 – dkt. 42.)

The Court will now address the pending motion for summary judgment as to the claim for breach of the Settlement Agreement.

## II.   SUMMARY JUDGMENT STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant has the initial burden of proving the absence of a genuine issue of material fact relative to the claims in question. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In response, the nonmovant must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324.

Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986), and Celotex Corp., 477 U.S. at 322–23). "[S]ummary judgment [is] proper if,

viewing the record in the light most favorable to the non-moving party and drawing all inferences in that party's favor, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." United States ex rel. Kosenske v. Carlisle HMA, 554 F.3d 88, 94 (3d Cir. 2009).

### III.   LEGAL PRINCIPLES AND DISCUSSION

A claim for breach of contract requires a showing of: "(l) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007).  The Settlement Agreement, which the parties signed, requires WII to: (1) pay the plaintiffs $17,500; and (2) perform a set of specified repairs, identified in the Settlement Agreement, "to commercially reasonable standards." (See dkt. 43-5 at 16–17.)  "Plaintiffs do not dispute that [WII] paid the $17,500.00 in settlement funds and that [WII] undertook repairs to the vehicle pursuant to the Settlement Agreement".  (Dkt. 43-1 at 8; see dkt. 45 at 3.)  Thus, the only issue is whether WII "performed the repairs to the vehicle to 'commercially reasonable standards' as contemplated by the Settlement Agreement".  (Dkt. 43-1 at 8.)   The parties now debate whether expert testimony is required to opine on "commercially reasonable standards" and whether the repairs adhered to such standards.

####    A.   Necessity of Expert Proof

The parties rely on New Jersey law.  (See, e.g., dkt. 43-1 at 7–9; dkt. 45 at 4–16; dkt. 47 at 5–12.)  See Metzler v. Am. Transp. Grp., No. 07-2066, 2008 WL 413311, at *1

4

n.2 (D.N.J. Feb. 13, 2008); Doe v. Div. of Youth & Family Servs., 148 F.Supp.2d 462, 493 n.6 (D.N.J. 2001).

"The test for determining whether expert testimony is required is whether the matter under consideration is so esoteric or specialized that jurors of common judgment and experience cannot form a valid conclusion." Giantonnio v. Taccard, 676 A.2d 1110, 1115 (N.J. App.Div. 1996). Expert testimony is generally required where the establishment of a particular standard of care or an industry standard is an element of the claim. (See dkt. 43-1 at 9.) See, e.g., Roberts v. Det, Diesel Corp., No. A-4691-05T2, 2007 WL 1038986, at *3–4 (N.J. App.Div. Apr. 9, 2007) (affirming order granting summary judgment on breach of contract claim based on failure to repair engine because plaintiff failed to provide expert testimony); Bonnieview Homeowners Ass'n v. Woodmont Builders, No. 03-4317, 2005 WL 2469665, at *4–5 (D.N.J. Oct. 6, 2005) (requiring expert testimony to show industry standard for environmental-consulting firm's property survey, because it is not within layperson's common knowledge); Jiries v. BP Oil, 682 A.2d 1241, 1243–44 (N.J. Super.Ct. 1996) (requiring expert testimony to prove automobile-repair shop "either performed the repair work improperly . . . or did not perform agreed work" where plaintiff alleges negligence); Giantonnio, 676 A.2d at 1115–16 (requiring expert testimony to show requisite standard of care for funeral procession and funeral home's deviation therefrom); Rosenberg by Rosenberg v. Cahill, 492 A.2d 371, 374–75 (N.J. 1985) (stating expert proof was required for negligence claim to show standard of care against chiropractor, because jury generally lacks requisite

special knowledge, technical training, and background to determine applicable standard of care without assistance of expert).

WII argues — "with the inclusion of language in the Settlement Agreement that the repairs would be performed to 'commercially reasonable standards'" — the plaintiffs must provide expert proof to show that it "failed to comply with its obligations" and, thus, breached the Settlement Agreement. (Dkt. 43-1 at 9.) WII argues that the plaintiffs "must establish, through an expert, both the 'commercially reasonable standards' for the repairs under the Settlement Agreement and also, that the repairs performed under the Settlement Agreement fell below these standards." (Id. (emphasis added).) WII claims that the plaintiffs have not offered any of the required expert testimony because: (1) the Court struck Barone's testimony; and (2) the plaintiffs disclosed no other experts. (See dkt. 43-1 at 10.) As a result, the plaintiffs cannot show that WII failed to perform repairs under the Settlement Agreement to "commercially reasonable standards" and thus, "there is no genuine issue of material fact as to whether [WII] breached its obligation under the Settlement [Agreement]." (Id.)

The plaintiffs argue in response that expert testimony is not needed because their own testimony suffices to establish a material issue of fact on whether WII performed the Settlement Agreement repairs to "commercially reasonable standards". (See dkt. 45 at 9.) Specifically, the plaintiffs argue that although they "may not have been able to articulate the standards of commercially reasonable standards, they are competent to testify as to the operation of the various components in their motor home." (Id.) Thus, the plaintiffs

6

argue that through their testimony, "an inference can be drawn that the complained of items are not repaired to commercially reasonable standards" despite being unable to "articulate the definition of commercially reasonable repairs." (Id. at 9–10.)

The plaintiffs also argue that the testimony of Wayne Degen ("Degen"), although he is not an expert, can be used to establish a material issue of fact regarding whether WII performed the repairs to "commercially reasonable standards." (See id.) Degen "is the general manager of Media Camping Center, an authorized Winnebago sales and service dealership during the time of the repairs at issue in this case." (Id. at 10.) The plaintiffs purchased the Motor Home, and had it serviced, at Media Camping Center. (See dkt. 45-6 at 5.) Degen spoke with the plaintiffs regarding the repairs involved under the Settlement Agreement, even though those repairs were not conducted at Media Camping Center, but instead at WII's Iowa facility. (Id. at 5–6.) Thus, the plaintiffs argue that Degen is competent to testify as to the success of any particular repair and whether such item has been repaired to commercially reasonable standards.

WII refutes these arguments, claiming that the plaintiffs: (1) are not qualified to opine on such a technical, specialized matter, and thus their testimony cannot demonstrate a breach; and (2) did not timely disclose Degen, a nonparty to the action, as an expert and thus his testimony is barred. (See dkt. 47 at 8–10.) WII points to Robert DeFiccio's deposition testimony, where he "didn't merely testify that he couldn't articulate the applicable 'commercially reasonable standards' with precision, he admitted that he has no idea what those standards would be". (Id. at 8 (citing Robert DeFiccio's deposition

testimony).)[1]  WII thus argues that the plaintiffs are unqualified to offer their subjective opinion on the sufficiency of the repairs according to "commercially reasonable standards." (Dkt. 47 at 8–10.)

WII also argues that based on the discovery schedule set herein, the plaintiffs were to disclose all experts by January 21, 2013. (See id. at 9; dkt. 26.) Degen was not deposed until March 15, 2013. (See dkt. 45-6 at 1.) "Plaintiffs failed to move to extend the discovery deadlines or otherwise seek leave to provide the required disclosures under [Federal Rule of Civil Procedure ("Rule")] 26(a)(2) in the event they wished to use Mr. Degen as an expert witness in this matter." (Dkt. 47 at 9 n.4.) WII "preserved such objections during Plaintiffs' deposition of [Degen] and also, provided a statement at the close of [Degen's] testimony noting that Plaintiffs had failed to timely and properly disclose [Degen] as an expert witness". (Id.) WII argues that the plaintiffs should be "precluded from relying upon Mr. Degen as an expert in any regard in this matter." (Id.)

WII further argues that Degen's testimony — even if the Court finds that he was timely disclosed as an expert — cannot "be used to meet Plaintiffs' burden . . . because Plaintiffs failed to show any sufficient foundation for Mr. Degen's opinions." (Id. at 10.)

---

[1] Robert DeFiccio admitted that he did not know the commercially reasonable standards for cabinetry, the main entry door, and the countertops. (See dkt. 45-14 at 4, 9–12; dkt. 47 at 8–9.) He further admitted that he had no experience or training in cabinet repair, countertop repair, repair of water leaks in vehicles, or carpentry. (See dkt. 45-14 at 4, 10–12; dkt. 47 at 8–9.)
  Mary Jo DeFiccio also admitted in her deposition testimony that she had no experience repairing vehicles, no experience repairing the items at issue here, and did not know whether WII's repairs met "commercially reasonable standards". (See dkt. 43-9 at 12–14; dkt. 47 at 9.)

Additionally, Degen: (1) testified that he had not reviewed the Settlement Agreement; and (2) never specifically testified that the repairs were not performed to "commercially reasonable standards". (Id.; dkt. 45-6 at 14.)  Thus, WII claims that Degen's testimony does not create an issue of fact as to whether there has been a breach of the Settlement Agreement and, as a result, the Plaintiffs cannot demonstrate, through their testimony or Degen's testimony, that the repairs performed by WII under the Settlement Agreement fell below commercially reasonable standards.

The Court agrees with WII.  In negotiating the Settlement Agreement, the parties included language requiring WII to perform the listed repairs to "commercially reasonable standards". (See dkt. 43-5 at 16–23.)  As a result, the plaintiffs had the burden of demonstrating a breach of the Settlement Agreement, which necessarily required the plaintiffs to establish that the repairs fell below "commercially reasonable standards".  By the nature of this standard being an "esoteric or specialized" one of a particular industry — and not within the "common judgment" of a layperson — expert testimony is required. Giantonnio, 676 A.2d at 1115; see Bonnieview, 2005 WL 2469665, at *4–5.

The plaintiffs themselves admitted to not knowing what these standards would be for vehicle repairs.  (See generally dkt. 43-7; dkt. 43-9.)  If the plaintiffs — particularly Robert DeFiccio, who has some knowledge of motor homes — cannot state what such "commercially reasonable standards" would be, it seems implausible that "jurors of common judgment and experience" would be able to form a "valid conclusion" without the assistance of expert testimony.  Giantonnio, 676 A.2d at 1115–16.  The plaintiffs

9

attempted to provide expert proof, but they were left without an expert witness once the Court struck Barone's testimony. (See dkt. 42 at 1.)

The plaintiffs then attempted to use Degen's testimony. (See generally dkt. 45-6.) However, his testimony on the commercial reasonableness of the repairs cannot be offered as fact-witness testimony because of his specialized knowledge as a general manager of an authorized dealership. Furthermore, the plaintiffs did not disclose Degen as an expert witness before January 21, 2013, and did not move to reopen discovery or admit Degen as an expert witness after the deadline. (See dkt. 26.)

Degen testified about WII's repairs, but neither saw nor reviewed the Settlement Agreement. (See dkt. 45-6 at 14.) Instead, Degen examined the Motor Home and testified as to his opinion on the sufficiency of those repairs. (Id. at 6–7.) As a fact witness, Degen could testify about his interactions with the plaintiffs in the purchase of the Motor Home, but his testimony regarding the sufficiency of the repairs ventured into opinions on whether they were "commercially reasonable". Such testimony, as the Court addressed earlier, requires an expert witness. The plaintiffs, on seeking to elicit this information from Degen, sought to use him as an expert. But the time to disclose experts had expired when Degen was deposed, and the plaintiffs did not seek to reopen discovery or admit Degen as an expert after the deadline. Thus, Degen's testimony is barred, and the plaintiffs may not use it to raise a material issue of fact regarding whether the repairs met "commercially reasonable standards." See Fed.R.Civ.P. 26(a)(2).

The testimony of each plaintiff is equally unavailing because "lay opinion based on scientific, technical, or other specialized information" is "expressly excluded", and there is "global preclusion of any kind of lay opinion on specialized or technical subjects". McCrary v. N.J. Transit Rail Operations, No. 05-88, 2008 WL 2885872, at *3, *6 (D.N.J. July 23, 2008). Given the "commercially reasonable standards" applicable here, the plaintiffs' argument requires expert proof in the form of scientific, technical, or other specialized information.

Robert DeFiccio and Mary Jo DeFiccio testified that they had no experience in the applicable field of repairs to the Motor Home when asked about items to be repaired under the Settlement Agreement, i.e., cabinetry, countertops, water leaks, or carpentry. (See dkt. 43-7 at 4, 9–12; dkt. 43-9 at 12–14.) With that testimony adduced, there is no way the plaintiffs could have known or testified about what "commercially reasonable standards" would be, and whether the repairs met those standards. The Court holds that no genuine issue of material fact exists regarding whether WII breached the Settlement Agreement — the only remaining issue here. Thus, the Court will grant the motion for summary judgment. Notwithstanding this holding, the Court will briefly address the plaintiffs' other arguments.

    **B.**    **Sufficiency of Damages**

WII argues that the plaintiffs did not raise an issue of fact in response to the motion by: (1) failing to allege their damages with the required specificity for a prima

facie case of breach of contract; and (2) putting forth unsubstantiated "guesstimates" that were insufficient to establish damages. (See dkt. 43-1 at 12–14.)

A plaintiff has the burden to prove damages in a breach of contract claim. See Frederico, 507 F.3d at 203; Caro Assocs. II v. Best Buy Co., No. 09-907, 2012 WL 762304, at *4 (D.N.J. Mar. 6, 2012). The plaintiffs must allege more than just bare assertions, conclusory allegations, or suspicions to meet this burden. See Kare Distrib. v. Jam Labels & Cards, No. 09-969, 2012 WL 266386, at *3 (D.N.J. Jan. 30, 2012) (granting summary judgment on breach of contract claim where plaintiff failed to offer more than conclusory declaration as damages proof).

Plaintiffs, in response to discovery requests, stated as to damages:

> $114,150 in total damages. $39,150 for diminution in value related to undisclosed body damage as set forth in Charlie Barone report. $75,000 in diminution in value and/or repair costs for balance of unrepaired items and items not repaired within a reasonable period of time plus lost use of motor home.

(Dkt. 43-5 at 6.) WII attacks these estimates.

WII first attacks the $39,150 in diminished-value damages, claiming that the plaintiffs "rely solely upon the report and testimony of their purported expert, Charles Barone"; however, "Barone's opinions with respect to these 'diminished value' damages have been stricken by this Court", leaving the plaintiffs without proof of "diminished value damages." (Dkt. 47 at 13 (citing dkt. 41 and dkt. 42 for order striking Barone's testimony, and dkt. 43-5 at 6 as source of plaintiffs' reliance on Barone).) The plaintiffs do not address this argument. The Court agrees that the plaintiffs — because of their

12

reliance on Barone's stricken testimony — cannot establish their entitlement to this amount of damages.

WII then argues that the remaining $75,000 in claimed damages are without any "documentary evidence of the costs to repair any items [that the plaintiffs] contend were not properly repaired under the Settlement Agreement." (Dkt. 47 at 13.) WII points to the plaintiffs' reliance on their own testimony and Degen's testimony in an attempt to offer "nothing more than unsupported and speculative repair estimates." (Id. at 13–14.)

Robert DeFiccio testified about how he calculated the $75,000 figure for "diminution in value and/or repair cost for balance of unrepaired items and items not repaired within a reasonable period of time, plus lost use of motor home." (See dkt. 45-14 at 3 (citing dkt. 43-5 at 6).) He explained what the $75,000 consisted of: "We have approximately $25,000.00 of repairs for cabinetry. Approximately $20,000.00 repair for I would call miscellaneous items. Approximately twenty thousand for replacement of our counter tops....And the other would be for ... the lost time." (Dkt. 45-14 at 3.) Further, he testified that his cost amounts for the cabinets and other miscellaneous items were "guesstimates" and the cost estimate to fix the countertops was a "pure guess". (Id. at 11–13.) When asked for documentary proof of the cost estimates for the aforementioned repairs, the plaintiffs stated that they had "[n]one at this time." (Dkt. 43-5 at 5.)

Robert DeFiccio, regarding the alleged $10,000 in lost time damages, testified that he could not provide an itemized list of expenses incurred due to loss of the Motor Home or other out-of-pocket expenses due to the repairs. (See dkt. 45-14 at 13–14.) Also,

while the plaintiffs alleged that they could not go on planned trips because of the repairs, Robert DeFiccio could not remember what trips were planned, nor could he provide any records or documents supporting this allegation. (See id.) Thus, as WII argues, the plaintiffs' damages calculations amount to nothing more than "guesstimates" by Robert DeFiccio, who is unqualified to provide such estimates based on his admitted lack of experience in the field. (See dkt. 43-1 at 14.)

The plaintiffs respond that Degen's testimony and Robert DeFiccio's testimony sufficiently establish damages as an element of a breach of contract claim. (See dkt. 45 at 14–15.) Degen provided estimates during his deposition, based on personal expertise and examination of the Motor Home, regarding repair costs for the pocket door, the cracked roof, and the replacement entry door. (See dkt. 45-6 at 15, 25.) Further, Degen obtained a $10,000 estimate for the cost of replacing the countertops. (Id. at 18–19.)

Robert DeFiccio "testified he is capable of ascertaining the repair costs for Settlement Agreement repairs by referencing the . . . Settlement Agreement repair documentation provided by [WII]." (Dkt. 45 at 14.) Further, the plaintiffs argue that "the owner of property is deemed competent to give an estimate of the value of his own personal property", and that the extent of the probative value of such an estimate is left to the consideration of the fact-finder. (Id. at 15 (citing Penbara v. Straczynski, 789 A.2d 134 (N.J. App.Div. 2002)).) The plaintiffs also rely on case law stating that "[p]roof of damages need not be done with exactitude", and that it may be sufficient for a plaintiff

14

— without expert knowledge — to "prove damages with such certainty as the nature of the case may permit". Lane v. Oil Delivery, 524 A.2d 405, 409 (N.J. App.Div. 1987).

But Lane goes on to explain that "[p]roof of damages need not be done with exactitude, <u>particularly when dealing with household furnishings and wearing apparel</u>." Id. (emphasis added).  Further, "[t]he basis for arriving at the opinion must, however, not be a matter of speculation and the witness must be required to establish the grounds for any opinion given." Id.  The Court will not deliver a detailed critique of the plaintiffs' "guesstimates", but holds that the damages calculations are speculative and insufficiently supported.  Notwithstanding the issues with the timeliness of the disclosure of Degen, Degen failed to provide documentation for his estimates or a foundation for his opinions.  Instead, he obtained an estimate from a third party for one specific repair, which appears to be inadmissible hearsay.  The testimony provided by each plaintiff fails to add the requisite support for the damage figures.  Thus, the motion for summary judgment could also be granted because the plaintiffs failed to come forward with evidence to sufficiently demonstrate the necessary element of damages under a breach of contract claim.

### C.   Timeliness of Repairs

The plaintiffs also allege that the repairs were not completed within a reasonable period of time or reasonable number of repair attempts, and thus there is a genuine issue of material fact as to whether WII breached the Settlement Agreement.  (See dkt. 45 at 11–13.)  The Settlement Agreement contained a warranty clause, whereby WII warranted the repairs for a period of six months "from the return of the vehicle to [plaintiffs]."

(Dkt. 43-5 at 16.) The plaintiffs — although not alleging that WII failed to make good on the warranty clause — claim that the "post Settlement Agreement repairs took an unreasonable period of time to be performed", thereby constituting a breach of contract. (Dkt. 45 at 11.)

This argument is without merit. The plaintiffs — putting aside their misplaced reliance on case law concerning breach of warranty under the Uniform Commercial Code ("UCC") and the MMWIA, which are inapplicable here — cannot establish a breach of the Settlement Agreement through a showing of repeated or extended repair visits. (See dkt. 14 at 15–16 (this Court stating that UCC and MMWIA do not apply to plaintiffs' claims because Settlement Agreement did not involve sale of goods).) To succeed on the claim for breach of contract, the plaintiffs must show that WII failed to comply with its obligations under the Settlement Agreement. See Yapak, LLC v. Mass. Bay Ins. Co., No. 09-3370, 2009 WL 3366464, at *1 (D.N.J. Oct. 16, 2009) (citing elements for prima facie case of breach of contract). The plaintiffs fail to address WII's contractual obligations by merely alleging that there were repeated repair visits and that the repairs took longer than anticipated. Further, without proof that the repeated repairs were included in the scope of the Settlement Agreement, that the repairs fell below "commercially reasonable standards", or that WII did not honor its six-month repair warranty, the allegations concerning repeated visits and timeliness fail to raise a genuine issue of material fact to defeat the motion for summary judgment.

## IV. CONCLUSION

The Court will grant WII's motion for summary judgment. The Court will issue an appropriate Order and Judgment.

 s/ Mary L. Cooper  
**MARY L. COOPER**  
United States District Judge

**Dated:** September 29, 2015